# Supreme Court of Florida

_____

No. SC16-1518
_____

**JAMES BARRY WRIGHT,**
Petitioner,

vs.

**CITY OF MIAMI GARDENS, etc., et al.,**
Respondents.

[September 15, 2016]

LEWIS, J.

This case is before the Court on a certified question of great public importance for review of the decision of the Third District Court of Appeal in Wright v. City of Miami Gardens, No. 3D16-1804, 41 Fla. L. Weekly D1907, 2016 WL 4376766 (Fla. 3d DCA Aug. 17, 2016).

In February 2016, James Barry Wright properly opened a campaign account with Wells Fargo Bank to run in the August 30, 2016, election for the office of Mayor in the City of Miami Gardens (the City). The qualifying period for this particular election commenced at 9 a.m. on May 26, 2016, and terminated at 4 p.m. on June 2, 2016.

On June 1, 2016, one day before the qualifying period ended, Wright tendered to Ronetta Taylor, the City Clerk of the City of Miami Gardens, a check issued on the Wells Fargo Bank campaign account in the amount of $620.00, which was the specifically required qualifying fee amount. The City Clerk accepted the check and issued Wright a receipt. It is undisputed that Wright's properly opened and properly maintained campaign account had ample funds to pay the qualification fee at all relevant times. Although the check was one of the first checks written by Wright after the opening of his campaign account, and therefore might be considered a starter check or "temporary" check, it bore his name, his campaign name, his campaign mailing address, and his campaign account number. Further, it is also undisputed that Wells Fargo had properly and successfully previously processed and honored six similarly formatted "temporary" checks in connection with Wright's other campaign expenses. Finally, it is undisputed that Wright met all other requirements to qualify as a candidate for the office of the Mayor of the City.

However, on June 16, 2016—more than two weeks later—the City Clerk was notified by the City's Finance Department that Wright's check had been returned to the City by its bank "because the account number on the check could

not be located."[1]  Indeed, the check that was returned was stamped with the following: "UN LOCATE ACCT."  Beneath that reflected "Do Not Re-deposit."  To the left of the check was the following: "6/8/2016 . . . This is a LEGAL COPY of your check.  You can use it the same way you would use the original check.  RETURN REASON—UNABLE TO LOCATE ACCOUNT."

Wright was not informed of the situation until four days later, on June 20, 2016.  While the City Clerk initially informed Wright that he could still pay the filing fee (and the $45.00 returned check fee that Wells Fargo had charged the City) with a cashier's check to remain qualified, Wright later received an e-mail informing him that he had been totally disqualified.  Nevertheless, Wright attempted, without success, to rectify the problem by actually tendering a cashier's check for the filing fee, as well as a separate check to pay the returned check fee.

When Wright requested an explanation as to why he could not rectify the situation which he had not created, the City Clerk referred Wright to section 99.061(7)(a)1. of the Florida Statutes which provides:

> (7)(a)  In order for a candidate to be qualified, the following items must be received by the filing officer by the end of the qualifying period:

---

1.  An e-mail in the record indicates that the City Clerk initially believed the check was returned for insufficient funds, but a subsequent e-mail indicated that such a belief was incorrect.

1. A properly executed check drawn upon the candidate's campaign account payable to the person or entity as prescribed by the filing officer in an amount not less than the fee required by s. 99.092, unless the candidate obtained the required number of signatures on petitions pursuant to s. 99.095. The filing fee for a special district candidate is not required to be drawn upon the candidate's campaign account. <u>If a candidate's check is returned by the bank for any reason, the filing officer shall immediately notify the candidate and the candidate shall have until the end of qualifying to pay the fee with a cashier's check purchased from funds of the campaign account. Failure to pay the fee as provided in this subparagraph shall disqualify the candidate.</u>

§ 99.061(7)(a)1., Fla. Stat. (2016) (emphasis added). The City Clerk further referred Wright to the decision of the First District Court of Appeal in <u>Levey v. Detzner</u> which had held that the clear and unambiguous language of section 99.061(7)(a)1. required disqualification under very similar circumstances:

The statute at issue is clear and unambiguous. Although we agree with the trial court that this result is harsh, it is mandated by the clear language of the statute. If a candidate's qualifying check is returned <u>for any reason</u>, the candidate must pay the qualifying fee by cashier's check before the end of the qualifying period. Levey's check was returned, the reason for that occurring is immaterial, and she failed to cure the deficiency within the time allotted by the statute. This circumstance "shall disqualify the candidate." Courts are not at liberty to extend, modify, or limit the express and unambiguous terms of a statute. <u>See</u> <u>Hill v. Davis</u>, 70 So. 3d 572, 575 (Fla. 2011); <u>see also</u> <u>State v. Chubbuck</u>, 141 So. 3d 1163 (Fla. 2014).

The result in this case is buttressed by the fact that under an earlier version of section 99.061, if a candidate's qualifying check was returned, the candidate was allowed 48 hours after being notified of that fact by the filing officer to pay the fee by cashier's check, "the end of qualifying notwithstanding." <u>See</u> § 99.061(7)(a) 1., Fla. Stat. (2010). The operative language of the current statute, which eliminated the possibility of a post-qualifying cure period for

- 4 -

candidates for federal, state, county, and district offices, was adopted by the Legislature in a 2011 amendment. See Ch. [20]11-40, § 14, at 22, Laws of Fla. It is not within a court's power to rewrite the statute or ignore this amendment, and any remedy Levey or others aggrieved by the amendment may have lies with the Legislature, not the courts.

AFFIRMED.

146 So. 3d 1224, 1226 (Fla. 1st DCA 2014), rehearing en banc denied, Sept. 22, 2014, review denied, 153 So. 3d 906 (Fla. 2014) (footnote omitted).

On June 30, 2016, Wright sought judicial redress by filing the instant action. Wright sought declaratory and mandamus relief against the City, the City Clerk, and the Miami-Dade County Supervisor of Elections.[2] On July 27, 2016, the trial court conducted a hearing on Wright's amended motion for temporary injunction and emergency writ of mandamus. In both counts, Wright sought to require the defendants to recognize Wright as a properly and validly qualified candidate for the office of Mayor in the August 30 election. In the alternative, Wright sought to require the defendants to reschedule the pertinent election to the general election taking place on November 9, 2016.

During the hearing on Wright's motion, the Supervisor of Elections announced that it had no objections to moving the election to the November

---

2. Originally, Wright did not include the Miami-Dade County Supervisor of Elections as a party, and the trial court granted a motion to dismiss without prejudice so that Wright could amend his pleadings accordingly.

general election if Wright were entitled to relief on the merits.  On the other hand, the City of Miami Gardens objected to consideration of this relief on the basis that it would add unnecessary expenses, create a hardship, potentially result in a separate December run-off election with low voter turnout, and affect its ability to ensure a fair election.  Specifically, the City noted that Wright would be able to raise funds that other candidates would not be able to because he had not been a candidate.

Ultimately, the trial court denied both of Wright's motions on the merits. The trial court concluded that Wright was not entitled to any relief because section 99.061(7)(a)1., Florida Statutes, explicitly required the City Clerk to disqualify Wright.  The trial court further explained that it was bound by the decision of the First District Court of Appeal in Levey, 146 So. 3d 1224, which it considered to be directly on point, absent any relevant precedent from the Third District Court of Appeal.

Wright sought review of the trial court's order in the Third District Court of Appeal.  Relying on largely the same reasoning as the trial court and the First District in Levey, the Third District affirmed:

> Appellees argue, and we agree, that the plain and unambiguous provisions of the controlling statute require affirmance.  When a candidate's qualification fee has been returned by the bank for any reason, the statute rather plainly provides a mechanism for a candidate to pay the qualifying fee only within the qualifying period.  We recognize the statute produces a harsh result in this case.  When an

unambiguous statute plainly requires a particular result, though, courts are powerless to fashion a different result under the auspices of fairness. Corfan Banco Asuncion Paraguay v. Ocean Bank, 715 So. 2d 967, 970 (Fla. 3d DCA 1998).

In denying Wright's emergency motion, the trial court cited, and was bound to follow, Levey[, 146 So. 3d 1224]. As in this case, in Levey, the candidate's qualifying fee check was returned because of a bank mistake, i.e., for reasons totally outside of the candidate's control. 146 So. 3d at 1225. Relying on the clear and unambiguous language of the controlling statute, the Levey court held that the statute's use of the term "returned by the bank for any reason" rendered irrelevant any consideration of whether the candidate bore responsibility for the check being returned. Id. at 1226.

We agree with the Levey court's rationale, and the statutory analysis contained therein. Despite our tremendous distaste for the result, we are compelled by the plain language of the relevant statute to affirm the trial court's denial of Wright's emergency motion.

Wright, 41 Fla. L. Weekly at D1908, 2016 WL 4376766 at *2.

However, the Third District also noted that "this issue's recurrence has moved the matter from the 'mere anecdotal' column to the 'likely to recur' column" and, therefore, certified the following question to be of great public importance:

Does section 99.061(7)(a)1. require a candidate's disqualification when the candidate's qualifying fee check is returned by the bank after the expiration of the qualifying period due to a banking error over which the candidate has no control?

Id. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. Further, we accepted jurisdiction and granted a motion to expedite review. Due to the late timing, while this case was pending in this Court, the August 30 mayoral election was conducted,

- 7 -

but voters were presented with a ballot that did not contain the name James Barry

Wright.

This review follows.

## ANALYSIS

### I. Certified Question

The certified question is one of statutory interpretation, which is a pure

question of law that we review de novo. When the Florida Election Code is at

issue, we primarily rely on the same rules of statutory reading and construction that

we apply to other statutes. Legislative intent is the polestar that guides our

analysis. See Knowles v. Beverly Enters.-Fla., Inc., 898 So. 2d 1, 5 (Fla. 2004).

> Florida case law contains a plethora of rules and extrinsic aids to guide courts in their efforts to discern legislative intent from ambiguously worded statutes. However,
>
> > [w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.
>
> A.R. Douglass, Inc. v. McRainey, 137 So. 157, 159 (Fla. 1931). See also Carson v. Miller, 370 So. 2d 10 (Fla. 1979); Ross v. Gore, 48 So. 2d 412 (Fla. 1950). It has also been accurately stated that courts of this state are
>
> > without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power.

American Bankers Life Assurance Company of Florida v. Williams, 212 So. 2d 777, 778 (Fla. 1st DCA 1968) (emphasis added).  It is also true that a literal interpretation of the language of a statute need not be given when to do so would lead to an unreasonable or ridiculous conclusion.  Johnson v. Presbyterian Homes of Synod of Florida, Inc., 239 So. 2d 256 (Fla. 1970).  Such a departure from the letter of the statute, however, "is sanctioned by the courts only when there are cogent reasons for believing that the letter [of the law] does not accurately disclose the [legislative] intent."  State ex rel. Hanbury v. Tunnicliffe, 124 So. 279, 281 (1929).

Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984).  In the specific context of

candidate qualification, this Court has further explained that:

> Literal and 'total compliance' with statutory language which reaches hypersensitive levels and which strains the quality of justice is not required to fairly and substantially meet the statutory requirements to qualify as a candidate for public office.

State ex rel. Siegendorf v. Stone, 266 So. 2d 345, 346 (Fla. 1972).

Although we are primarily concerned with subparagraph (7)(a)1., section

99.061(7) provides in full:

> (7)(a)  In order for a candidate to be qualified, the following items must be received by the filing officer by the end of the qualifying period:

> 1.  A properly executed check drawn upon the candidate's campaign account payable to the person or entity as prescribed by the filing officer in an amount not less than the fee required by s. 99.092, unless the candidate obtained the required number of signatures on petitions pursuant to s. 99.095.  The filing fee for a special district candidate is not required to be drawn upon the candidate's campaign account.  If a candidate's check is returned by the bank for any reason, the filing officer shall immediately notify the candidate and the candidate shall have until the end of qualifying to pay the fee with a cashier's check purchased from funds of the campaign account.

- 9 -

<u>Failure to pay the fee as provided in this subparagraph shall disqualify the candidate.</u>

2. The candidate's oath required by s. 99.021, which must contain the name of the candidate as it is to appear on the ballot; the office sought, including the district or group number if applicable; and the signature of the candidate, which must be verified under oath or affirmation pursuant to s. 92.525(1)(a).

3. If the office sought is partisan, the written statement of political party affiliation required by s. 99.021(1)(b).

4. The completed form for the appointment of campaign treasurer and designation of campaign depository, as required by s. 106.021.

5. The full and public disclosure or statement of financial interests required by subsection (5). A public officer who has filed the full and public disclosure or statement of financial interests with the Commission on Ethics or the supervisor of elections prior to qualifying for office may file a copy of that disclosure at the time of qualifying.

(b) If the filing officer receives qualifying papers during the qualifying period prescribed in this section which do not include all items as required by paragraph (a) prior to the last day of qualifying, the filing officer shall make a reasonable effort to notify the candidate of the missing or incomplete items and shall inform the candidate that all required items must be received by the close of qualifying. A candidate's name as it is to appear on the ballot may not be changed after the end of qualifying.

(c) The filing officer performs a ministerial function in reviewing qualifying papers. In determining whether a candidate is qualified, the filing officer shall review the qualifying papers to determine whether all items required by paragraph (a) have been properly filed and whether each item is complete on its face, including whether items that must be verified have been properly verified pursuant to s. 92.525(1)(a). The filing officer may not determine whether the contents of the qualifying papers are accurate.

§ 99.061(7), Fla. Stat. (emphasis added).

Like all the other courts that have considered this language, we believe that the statute's following language is abundantly clear and unambiguous:

> If a candidate's check is returned by the bank for any reason, the filing officer shall immediately notify the candidate and the candidate shall have until the end of qualifying to pay the fee with a cashier's check purchased from funds of the campaign account. Failure to pay the fee as provided in this subparagraph shall disqualify the candidate.

§ 99.061(7)(a)1., Fla. Stat.

Because this language is clear and unambiguous, there is no basis or authority to apply rules of construction. See Holly, 450 So. 2d at 219. In this case, Wright's check was returned, and although it was not due to any fault of Wright's and was exclusively due to a banking error, the statute on its face applies because it applies to returns "by the bank for any reason." Finally, although Wright was not informed of this bank error until after qualifying had ended, he only had "until the end of qualifying to pay the fee with a cashier's check purchased from funds of the campaign account." Even if we were to take issue with the draconian and irrational policy of requiring payment before notice, as was the case with the facts before us, the next sentence in the statute ends further inquiry. In no uncertain terms, the statute provides: "Failure to pay the fee as provided in this subparagraph shall disqualify the candidate." Quite clearly, subparagraph 7(a)1. does not provide any method of paying the fee after the end of qualifying. Therefore,

because the fee was not paid before the end of qualifying, under the plain language of the statute the filing officer had no choice but to disqualify Wright.[3]

The fact that the filing officer received "[a] properly executed check drawn upon the candidate's campaign account payable to the person or entity as prescribed by the filing officer in an amount not less than the fee required" is of no moment because the statute quite clearly considers a returned check as indicating that the fee has not been paid. There could be no other explanation as to why upon a returned check, the candidate has a second opportunity "to pay the fee," albeit before "the end of qualifying."

We further agree with the district courts that have reviewed this statute in application that this law yields a most distasteful and harsh result when a candidate who did everything right is disqualified due to a banking error beyond the candidate's control. Some of the district court judges and Wright have contended that this demonstrates an absurd result that could not have been intended by the Legislature. We acknowledge that the "absurd result" doctrine is alluring on these facts, but there is no ambiguity upon which to apply that rule of construction. We are convinced that the Legislature did intend the law to effect a true bright line, and

---

3. We also note that our precedent concerning the doctrine known as substantial compliance has no place in our analysis because the statute at issue is not ambiguous and directly addresses the facts presented.

therefore, we cannot resort to a rule of construction based on "absurdity." Unlike in other cases where the absurd result doctrine has been applied to an ambiguous statute, here the Legislature specifically removed the language from the prior statute that would have avoided the result of disqualification. Specifically, the Legislature removed language that would have allowed payment of the fee within 48 hours upon notice of a returned check, "the end of qualifying notwithstanding," and added that the candidate had "until" the end of qualifying:

> 99.061 Method of qualifying for nomination or election to federal, state, county, or district office.—
>
> . . .
>
> (7)(a) In order for a candidate to be qualified, the following items must be received by the filing officer by the end of the qualifying period:
>
> 1. A properly executed check drawn upon the candidate's campaign account <u>payable to the person or entity as prescribed by the filing officer</u> in an amount not less than the fee required by s. 99.092<u>,</u> <u>unless the candidate obtained the required number of signatures on petitions</u> ~~or, in lieu thereof, as applicable, the copy of the notice of obtaining ballot position~~ pursuant to s. 99.095. The filing fee for a special district candidate is not required to be drawn upon the candidate's campaign account. If a candidate's check is returned by the bank for any reason, the filing officer shall immediately notify the candidate and the candidate shall <u>have until</u>~~,~~ the end of qualifying ~~notwithstanding, have 48 hours from the time such notification is received, excluding Saturdays, Sundays, and legal holidays,~~ to pay the fee with a cashier's check purchased from funds of the campaign account. Failure to pay the fee as provided in this subparagraph shall disqualify the candidate.

Ch. 2011-40, § 14, Laws of Fla. (2011) (words ~~stricken~~ are deletions; words underlined are additions).

Moreover, the other parts of the statute adopt the same bright-line approach requiring all aspects of qualifying within the candidate's control to be completed within the qualifying period. Furthering the cohesion of this bright line, in the very same Act, the Legislature removed all discretion from the filing officer by adding new subparagraph 99.061(7)(c):

> (c)   The filing officer performs a ministerial function in reviewing qualifying papers. In determining whether a candidate is qualified, the filing officer shall review the qualifying papers to determine whether all items required by paragraph (a) have been properly filed and whether each item is complete on its face, including whether items that must be verified have been properly verified pursuant to s. 92.525(1)(a). The filing officer may not determine whether the contents of the qualifying papers are accurate.

Ch. 2011-40, § 14, Laws of Fla. (2011) (emphasis added).

Furthermore, the result appears to be the product of specific intent when we note that the Legislature did not amend the identical provision that governs non-partisan elections. To this date, in nonpartisan elections,

> If a candidate's check is returned by the bank for any reason, the filing officer shall immediately notify the candidate and the candidate shall, the end of qualifying notwithstanding, have 48 hours from the time such notification is received, excluding Saturdays, Sundays, and legal holidays, to pay the fee with a cashier's check purchased from funds of the campaign account. Failure to pay the fee as provided in this subparagraph shall disqualify the candidate.

- 14 -

§ 105.031(5)(a)1., Fla. Stat. (2016); see also Ch. 2011-40, § 51, Laws of Fla. (2011) (amending section 105.031, but not removing this provision).[4] We presume that the Legislature acts purposefully when it removes language from one statute, but leaves identical language in a different statute. See, e.g., Beach v. Great W. Bank, 692 So. 2d 146, 152 (Fla. 1997); Leisure Resorts, Inc. v. Frank J. Rooney, Inc., 654 So. 2d 911, 914 (Fla. 1995) ("When the [L]egislature has used a term, as it has here, in one section of the statute but omits it in another section of the same statute, we will not imply it where it has been excluded.").

Finally, in his Levey dissent, Judge Makar opined that the Legislature could not have intended this result when it could very well happen to its own members. See Levey, 146 So. 3d at 1232 (Makar, J., dissenting from the denial of rehearing en banc). This is a thought-provoking and compelling statement. Tellingly however, in the two years following the decision in Levey, the law remains the same. This Court presumes that the Legislature is aware of judicial construction of its statutes. See Dickinson v. Davis, 224 So. 2d 262, 264 (Fla. 1969) (noting "[t]he Legislature is presumed to know existing law when a statute is enacted, and, also

---

4. We note that the Charter of the City of Miami Gardens designates the mayoral election as one that is nonpartisan—"Nonpartisan Elections. All elections for the Council and Mayor shall be conducted on a nonpartisan basis. The ballot shall not show the party designation of any candidate." However, none of the parties has asserted that chapter 105 of the Florida Statutes, governing nonpartisan elections, applies.

- 15 -

in re-enacting a statute the Legislature is presumed to be aware of constructions placed upon it by the Court.") (internal citation omitted). This suggests further that the bright line was intentional rather than an unfortunate oversight.

Therefore, because the language at issue is clear and unambiguous we are compelled to answer the certified question in the affirmative. Were we to construe the statute as allowing the payment of the fee with a cashier's check after the end of qualifying, we would literally be legislating by reinserting the language "notwithstanding the end of qualifying" after the Legislature in its wisdom removed it. This is certainly beyond our power because as a coequal branch of government with the utmost respect for the separation of powers, we can neither legislate nor question the wisdom of the Legislature. See Holley v. Adams, 238 So. 2d 401, 404-05 (Fla. 1970) ("First, it is the function of the Court to interpret the law, not to legislate. Second, courts are not concerned with the mere wisdom of the policy of the legislation . . . The judiciary will not nullify legislative acts merely on grounds of the policy and wisdom of such act, no matter how unwise or unpolitic they might be, so long as there is no plain violation of the Constitution."). Answering the certified question in the affirmative does not end our review in this case, however, "because of the dominant force of the Constitution, an authority superior to both the Legislature and the Judiciary." See id. at 405.

Wright asserted his constitutional rights in his complaint, alleging that the City Clerk "further provided [Wright] with a copy of the case Levy v. Detzner . . . upon which the City bases its untenable position to deny [Wright] his constitutional right to run for public office." In addition, in his initial brief before this Court, Wright stated, "Thus, Mr. Wright implores this Court to reach a different result from the First District, and adopt the compelling dissents of Judges Benton and Makar." Init. Br. of Petitioner at 21. Before the Third District, Wright concluded his briefs by quoting and adopting Judge Makar's conclusion and reference to a case strictly concerning the constitutionality of an election qualification requirement:

> "Disqualifying a candidate who did everything right is both unreasonable and unnecessary." Levey v. Detzner, 146 So. 3d [at 1234] (Makar, J., dissenting) (quoting Treiman v. Malmquist, 342 So. 2d 972 (Fla. 1977)).

Given the fundamental importance of free and fair elections to our republican form of government, the recurrence of these "banking errors" and their ensuing harsh consequences, as well as the strong potential that other prospective candidates have similarly been turned away, but simply declined to keep fighting, we consider this issue to be one of fundamental importance.

Our Florida Constitution opens by succinctly reaffirming a truism that is the heart of our government: "All political power is inherent in the people." Art. 1, § 1

Fla. Const. This Court has long considered free and fair elections vital to ensuring that such political power is not usurped from the people.

Our Constitution further provides that "Registration and elections shall . . . be regulated by law." Art. VI, § 1, Fla. Const. This Court has explained that: "Under this provision, the Legislature is directed to enact laws regulating the election process. . . . The constitutional directive, however, is not plenary: legislative acts that impose '[u]nreasonable or unnecessary restraints on the elective process are prohibited.' " AFL-CIO v. Hood, 885 So. 2d 373, 375-76 (Fla. 2004) (quoting Treiman, 342 So. 2d at 975). In Treiman, this Court examined the contours of this constitutional limitation in detail:

> Although the Legislature is charged with the authority and responsibility of regulating the election process so as to protect the political rights of the people and the integrity of the political process, these regulations must be reasonable and necessary restraints on the elective process and not inconsistent with the constitution of this state. In order to assure orderly and effective elections, the state may impose reasonable controls. In Bodner v. Gray, 129 So. 2d 419 (Fla. 1961), this court explained:
>
> > 'The law places restraints upon all of its citizens in the exercise of their rights and liberties under a republican form of government. Such restraints have been found to be necessary in the development of our democratic processes to preserve the very liberties which we exercise. Similar restraints may lawfully be imposed upon individual candidates for public office.'
>
> The declaration of rights expressly states that 'all political power is inherent in the people.' [Art. I, § 1, Fla. Const.] The right of the people to select their own officers is their sovereign right, and the

rule is against imposing unnecessary and unreasonable disqualifications to run. cf. Ervin v. Collins, 85 So. 2d 852 (Fla. 1956), wherein this court declared that:

> 'The lexicon of democracy condemns all attempts to restrict one's right to run for office. The Supreme Court of the United States has approved the support of fundamental questions of law with sound democratic precepts.'

Unreasonable or unnecessary restraints on the elective process are prohibited. Pasco v. Heggen, 314 So. 2d 1 (Fla. 1975).

Fundamental to our system of government is the principle that the right to be a candidate for public office is a valuable one and no one should be denied this right unless the Constitution or an applicable valid law expressly declares him to be ineligible. cf. Vieira v. Slaughter, et al., 318 So. 2d 490 (Fla. 1st DCA 1975). This court, in Hurt v. Naples, 299 So. 2d 17 (Fla. 1974), emphasized:

> 'Discouragement of candidacy for public office should be frowned upon in the absence of express statutory disqualification. The people should have available opportunity to select their public officer from a multiple choice of candidates. Widening the field of candidates is the rule, not the exception, in Florida.'

To determine reasonableness of the restraint or condition placed on the right to seek public office, the nature of the right asserted by the individual must be considered in conjunction with the extent that it is necessary to restrict the assertion of the right in the interest of the public. Jones v. Board of Control, 131 So. 2d 713 (Fla. 1961).

Treiman, 342 So. 2d at 975-76.

Because the disqualification involved here is due to a law expressly disqualifying Wright, our only inquiry is whether the law is a valid law. In performing this inquiry, however, we must remember that the law in question

- 19 -

"comes to us with a presumption of validity—an extremely strong presumption in statutes regulating the conduct of elections." Bodner, 129 So. 2d at 421. "To overcome the presumption, the invalidity must appear beyond reasonable doubt, for it must be assumed the [L]egislature intended to enact a valid law." License Acquisitions, LLC v. Debary Real Estate Holdings, LLC, 155 So. 3d 1137, 1143 (Fla. 2014) (internal quotation marks omitted).

Nevertheless, as Judge Makar and Wright have similarly concluded, we are convinced beyond a reasonable doubt that disqualifying a candidate who did everything right due to an error of a third party bank that was totally beyond the control of the candidate is both unreasonable and unnecessary, as well as plainly irrational.

We have previously undertaken such an analysis on a few occasions. In Treiman, we held unconstitutional a judicial candidate oath requirement that the candidate was registered to vote in the last preceding general election. Treiman, 342 So. 2d at 976. This Court noted the arbitrary divide caused by the requirement:

> For those persons who were possessed of all of the qualifications of electors prior to the closing of the registration books preceding the last general election and who actually registered to vote in this state in that election, the statute poses no problem. However, it effectively forecloses the candidacy of all of those otherwise qualified persons who, because of age, illness, residence or other reason, failed or were unable to register to vote in a time period somewhere in the past.

Id. We struck down that requirement as unconstitutional:

> We find that Section 105.031(4)(a) does not serve any reasonable or legitimate state interest. It does not in any way protect the integrity of the election process or purity of the ballot; it does not serve to keep the ballot within manageable limits, cf. Lubin v. Parrish, 415 U.S. 709 (1974), Bullock v. Carter, 405 U.S. 134 (1972), Pasco v. Heggen, [314 So. 2d 1]; nor does it serve to assure orderly and effective elections; it does not serve to maintain party loyalty and perpetuate the party system, cf. Crowells v. Petersen, 118 So. 2d 539 (Fla. 1960). The barrier it erects is an unnecessary restraint on one's right to seek elective office. Noteworthy is the fact that this restriction applies solely to candidates for judicial office. No such similar restraint is placed on candidates for any other political office.
>
> For the foregoing reasons, we find Section 105.031(4)(a) unconstitutional.

Id.

Like the arbitrary divide in Treiman, the statute at issue here is arbitrary and without a rational basis. For those prospective candidates who tender properly executed checks that ultimately clear because they have done all they were required to, the statute poses no problem. However, the statute effectively forecloses the candidacy of all otherwise qualified candidates who have done all they were required to do but have had their checks returned, not due to insufficient funds or some other matter within their control, but due to sheer bad luck resulting from a bank error totally beyond their control. This bright line, by turning on luck rather than conduct, is irrational and violates Wright's constitutional right to run for public office. There is no relief valve for circumstances such as these.

Moreover, a quick glance at the Florida Statutes regulating banks and checks reveals that notice that a check has been returned before the end of qualifying is essentially impossible if both the payor bank and collecting bank use all the time they are minimally entitled to under Florida law. The qualifying period for all elections by statute is only 96 hours or 4 days long. See §§ 99.061(1)-(3), Fla. Stat.[5] Likewise, a collecting bank and payor bank combined are minimally entitled to at least four business days to effect notice of dishonor. See § 674.104(1)(j), Fla. Stat. (2016) ("In this chapter, unless the context otherwise requires, the term: (j) 'Midnight deadline' with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later.); § 674.1081(2), Fla. Stat. (2016) ("An item or deposit of money received on any day after a cutoff hour so fixed or after the close of the banking day may be treated as being received at the opening of the next banking day."); § 674.1071, Fla. Stat. (2016) ("A branch or separate office of a bank is a separate bank for the purpose of computing the time within which, and determining the place at or to which, action may be taken or notices or orders must be given under this chapter and under chapter 673."); § 674.1091(2), Fla. Stat. (2016) ("Delay by a collecting bank or

_____

5. As noted above, the qualifying period in this particular nonpartisan municipal race was five business days.

payor bank beyond time limits prescribed or permitted by this code or by instructions is excused if: (a) The delay is caused by interruption of communication or computer facilities, suspension of payments by another bank, war, emergency conditions, failure of equipment, or other circumstances beyond the control of the bank; and (b) The bank exercises such diligence as the circumstances require."); see generally § 674.202, Fla. Stat. (2016) (entitled "Responsibility for collection or return; when action timely.").

Indeed, the facts of this case demonstrate that this is more reality than theory. Here, eight days expired—twice the length of the statutory qualifying period—for Wright's check to be returned erroneously for the bank's failure to locate an account number despite the fact that his check bore his name, address, and account number. Had luck been on Wright's side, a bank official likely would have taken a proper closer look at the check and found the account, avoiding the situation presented today. However, solely because luck was not on Wright's side, he is abruptly disqualified without an opportunity to cure the error, and the citizens of Miami Gardens are deprived of an otherwise qualified candidate. Again, this is irrational. Where offering a cure would not adversely impact an election or the election process, the arbitrary disqualification is the antithesis of our democracy and the election of its officers.

In a similar manner, the bright-line rule imposed by the amendment to section 99.061(7)(a)1. is neither reasonable nor necessary to serving any legitimate state interest we have previously considered in election cases. First, rather than protect the integrity of the election process or purity of the ballot, it only sets a trap that operates in this case to thwart that objective. If this law were to stand, the various cautionary hypotheticals raised by Judge Makar concerning political shenanigans become true possibilities going forward:

> Finally, a troubling and unintended consequence of disqualifying otherwise qualified candidates on the type of banking error in this case is the potential for political shenanigans. What if political operatives wrongfully induce a banking official to put a hold on a gubernatorial candidate's check causing its return after qualifying's end? Ditto as to checks from a political party? Or if a bank official or employee undertakes a pre-textual check fraud investigation that renders a candidate's qualifying account without funds temporarily? Must the Department turn a blind eye and rotely disqualify candidates in these situations? Asking the question answers it: the Department should not.

Levey, 146 So. 3d at 1233 (Makar, J., dissenting from the denial of rehearing en banc). Moreover, in situations in which there are only two candidates, the threat of political shenanigans against the integrity of the political process is even more pronounced because disqualification of one results in the other candidate winning by default. Indeed, although there are no allegations that political shenanigans were at issue in Levey, the statute in that case deprived the people of an election and all of the benefits that flow from elections:

> As it currently stands, the 68,218 registered voters in House District 113 get the short end of the stick. There will be no robust candidate debates, no campaigning on important legislative issues affecting their futures, and no choice between candidates with alternative visions for their district; instead, they have a qualified candidate unnecessarily pushed to the sidelines and another qualified candidate who wins by default without running the race.

Id. at 1234 (Makar, J., dissenting from the denial of rehearing en banc). Thus, rather than protecting the integrity of the political process, this amendment has injected doubt where there was none—under the previous law, such possibilities for political shenanigans were foreclosed by the candidate's right to tender a cashier's check "notwithstanding the end of qualifying."

Second, we glean from the affidavit of the Miami-Dade Supervisor of Elections and her able briefs in this matter that one might advance the notion that this law serves the interest of assuring orderly and effective elections. However, the fact that the Legislature retained the ability to pay with a cashier's check within 48 hours notwithstanding the end of qualifying with regard to nonpartisan elections belies such an assertion. Further, in this very case, the Clerk initially offered to accept Wright's payment by cashier's check. Indeed, the prior statute was in effect since 1995 without any problems we have found or that have been brought to our attention. Likewise, similar provisions affording even more time to pay with a cashier's check were quietly in place for decades. Moreover, this draconian measure cannot be said to be necessary when the Legislature alternatively could

- 25 -

have moved the statutory qualifying period to an earlier time, as it does in other elections, to assure orderly and effective elections.

It is clear that none of the other interests previously considered by this Court could possibly justify the amendment to section 99.061(7)(a)1. The amendment does not serve to keep the ballot within manageable limits, nor does it serve to maintain party loyalty and perpetuate the party system; it does not serve to protect a candidate's right to privacy.

Therefore, we conclude that this law unconstitutionally erects a barrier that is an unnecessary restraint on one's right to seek elective office. This unnecessary and irrational barrier, which has already in the case of Levey completely deprived the citizens of an election, can no longer stand. Unreasonable and unnecessary restrictions on the elective process are a threat to our republican form of government. At their worst, they cloak tyranny in the garb of Democracy. See Thomas Paine, Dissertation on the First Principles of Government (1795) ("The right of voting for representatives is the primary right by which other rights are protected. To take away this right is to reduce a man to slavery, for slavery consists in being subject to the will of another, and he that has not a vote in the election of representatives is in this case.").

We therefore sever the portion of section 14 of chapter 2011-40, Laws of Florida, that amends section 99.061(7)(a)1. of the Florida Statutes. See Ch. 2011-

40, § 79, Laws of Fla. (2011) ("If any provision of this act or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are severable."). Thus, the version of section 99.061(7)(a)1. in existence prior to the 2011 amendments is revived by operation of law. See Henderson v. Antonacci, 62 So. 2d 5, 7 (Fla. 1952).[6]

We are mindful of the impacts and burdens our decision today may have on the Legislature, the Supervisor of Elections, the other candidates, and the City of

---

6. Contrary to Justice Canady's concur in result only opinion, as we stated above, Wright did raise in his complaint the issue of the constitutionality of the statute by specifically claiming that his constitutional rights were violated. Wright has consistently asserted that the statute is unreasonable, irrational, and unnecessary, as has Judge Makar. See generally Levey, 146 So. 3d at 1227 (Makar, J., dissenting from the denial of rehearing en banc). As discussed at length above, arbitrariness, unreasonableness, unnecessariness, and irrationality all characterize the constitutional inquiry for election regulations. See Treiman, 342 So. 2d at 975-76. Consequently, Wright's constitutional right to run for public office was not only raised, but has been the focus of the litigation surrounding the statute. In addition, our precedent in Holley, 238 So. 2d 403, specifically recognizes this Court's duty to invalidate a statute when an unambiguous statute violates a clear mandate of the Constitution: "To the extent . . . that such an act violates expressly or clearly implied mandates of the Constitution, the act must fall, not merely because the courts so decree, but because of the dominant force of the Constitution, an authority superior to both the Legislature and the Judiciary." Id. at 405 (citing Amos v. Matthews, 126 So. 308 (Fla. 1930)).

Miami Gardens. Indeed, as some of the relief requested here is at equity, these are central considerations.

However, as a Court, our first and foremost duty is to enforce our Constitution and to protect all the rights of all Floridians thereunder. In this case, an irrational, as well as unreasonable and unnecessary restriction on the elective process has tainted the entire Miami Gardens election for the office of Mayor by keeping the name of a candidate off the ballot, and therefore, beyond the reach of all the voters.[7] This is irremediable without a new election.

## CONCLUSION

We therefore quash the decision below. As the previous statute is now the law, Wright "shall, the end of qualifying notwithstanding, have 48 hours from the time such notification is received, excluding Saturdays, Sundays, and legal holidays, to pay the fee with a cashier's check purchased from funds of the campaign account." § 99.061(7)(a)1., Fla. Stat. (2010). This Court's mandate shall serve as Wright's notification. We remand for further proceedings not inconsistent with this opinion, including the invalidation of the August 30 election upon Wright's qualification.

---

7. We note that the voters could not have even written in Wright's name in this election because no write-in candidates were qualified.

Upon qualification, Wright's name shall be placed on the November ballot. If the parties are unable to accomplish that task, then the City will be forced into a special election for the position of Mayor of the City. See Francois v. Brinkmann, 147 So. 3d 613, 616 (Fla. 4th DCA 2014), aff'd, 184 So. 3d 504 (Fla. 2016) (invalidating open primary election where unconstitutional law foreclosed write-in candidate from qualifying); Matthews v. Steinberg, 153 So. 3d 295 (Fla. 1st DCA 2014), aff'd, SC14-2202, 2016 WL 3419207 (Fla. June 22, 2016) (authorizing invalidation and new election under same circumstances as Francois, 147 So. 3d 613).

No motion for rehearing will be entertained.

LABARGA, C.J., and PARIENTE, QUINCE, and PERRY, JJ., concur.
CANADY, J., concurs in result only with an opinion.
POLSTON, J., dissents with an opinion.

CANADY, J., concurring in result only.

I agree with the result reached by the majority—allowing Wright's candidacy to go forward—but I strongly disagree with the unprecedented route taken by the majority to reach that result.

Based on the arguments presented by Wright, I would decide this case as a matter of statutory interpretation along the lines advanced by Judge Makar in his dissent from the denial of rehearing en banc in Levey v. Detzner, 146 So. 3d 1224 (Fla. 1st DCA 2014). As Judge Makar cogently explains, the critical sentence in

- 29 -

section 99.061(7)(a) addresses only circumstances in which a check is returned before "the end of qualifying." Id. at 1231-32 (Makar, J., dissenting from the denial of rehearing en banc). I therefore disagree with the statutory interpretation adopted by the majority. But I agree with quashing the Third District decision and allowing Wright's candidacy to go forward.

Regarding the majority's holding that the version of section 99.061(7)(a) enacted in 2011 is unconstitutional, there is one big problem: the Petitioner has presented no argument challenging the constitutionality of the statute.[8] It is not

_____

8. The majority asserts that the constitutionality of the statute is properly at issue here because Wright "specifically claim[ed] that his constitutional rights were violated" and "has consistently asserted that the statute is unreasonable, irrational, and unnecessary." Majority op. at 27. The majority's position is without any support. Wright has never sought a determination that the statute is unconstitutional. Indeed, he has never so much as suggested that the statute is constitutionally infirm. His position has consistently been that the City's position regarding application of the statute is incorrect. He has taken the position not that the statute is infirm but that the City's interpretation of the statute is unreasonable. Wright did make a reference in his complaint to the City's "untenable position to deny [Plaintiff] his constitutional right to run for public office." Majority op. at 17 (quoting Petitioner's "Amended Complaint for Declaratory and Injunctive Relief, and Emergency Writ of Mandamus" at ¶ 51) (majority emphasis omitted). That is part of Wright's attack on the City's interpretation of the statute. It is by no means a challenge to the constitutionality of the statute. The majority can provide no quotations or citations to support its assertions. The vacuity of the majority's assertions on this point is highlighted by its reliance on Judge Makar's dissent from the denial of rehearing en banc in Levey. The majority says that Judge Makar has asserted that the "the statute is unreasonable, irrational, and unnecessary." Majority op. at 27 (citing Levey, 146 So. 3d at 1227). As anyone who reads Judge Makar's dissent will soon discover, the majority's characterization of his position is totally incorrect. Judge Makar's position is that the statutory interpretation adopted by the majority here is "unreasonable and unnecessary"—not that the

- 30 -

within the province of an appellate court to overturn the ruling of a lower court on a ground that has not been urged by the party challenging the lower court's decision. Anytime that a court does so, the basic structure of the appellate process—which depends on the presentation of issues and the marshaling of arguments by the parties—is seriously undermined. The damage is compounded when a court sua sponte—without the benefit of any argument by the parties—declares a statute unconstitutional. In such cases, injury is done not only to the appellate process but also to the separation of powers. "It is a well established principle that the courts will not declare an act of the legislature unconstitutional unless its constitutionality is challenged directly by one who demonstrates that he is, or assuredly will be, affected adversely by it. . . . Courts should not voluntarily pass upon constitutional questions which are not raised by the pleadings." Henderson v. Antonacci, 62 So. 2d 5, 8 (Fla. 1952); see also State v. Turner, 224 So. 2d 290, 291 (Fla. 1969) ("This Court has, on a number of occasions, held that it is not only unnecessary, but improper for a Court to pass upon the constitutionality

---

statute is unconstitutional. Levey, 146 So. 3d at 1234. Similarly, the majority's citation of Holley v. Adams, 238 So. 2d 401 (Fla. 1970), provides no support for the majority's consideration of an issue that has not been properly presented. Majority op. at 27. The Holley Court addressed the constitutional issue there because "Holley attacked the constitutionality" of the particular statute that was at issue. Holley, 238 So. 2d at 404.

of an act, the constitutionality of which is not challenged; that Courts are not to consider a question of constitutionality which has not been raised by the pleadings. . . ." ). Today's decision needlessly transgresses this principle.

Under our system of government, one of the most serious and consequential judgments that any court can render is a judgment that the Legislature has violated the Constitution in enacting a particular law. Here, the majority renders such a judgment without anyone suggesting—much less arguing—that such a judgment is required by the Constitution. No matter how wise and learned a court may be, the court should not strike down as unconstitutional a law adopted by the Legislature without the benefit of considering any arguments on the issue of constitutionality. As a coordinate branch of government, the Legislature is certainly entitled to have some argument in favor of constitutionality considered by a court before that court rules that a statute is unconstitutional. See Fla. R. Civ. P. 1.071(b) (providing that a party "drawing into question the constitutionality of a state statute" is required to serve notice on "the Attorney General or the state attorney of the judicial circuit in which the action is pending").

The potential for unanticipated and untoward consequences is manifest when the court fails to hear and consider such arguments. The majority's decision in this case provides a perfect example. Here, the majority declares the statute facially unconstitutional—rather than unconstitutional as applied—and resurrects an earlier

- 32 -

version of the statute under which a candidate who submits a check that is properly returned by the bank for non-sufficient funds will nonetheless be given an opportunity to cure the defect. It is unfathomable that such a result could be required by the Constitution, but that result is mandated by today's ill-considered decision.

POLSTON, J., dissenting.

Section 99.061(7)(a)1., Florida Statutes (2016) (emphasis added), clearly and unambiguously provides that "[i]f a candidate's check is returned by the bank for any reason, the filing officer shall immediately notify the candidate and the candidate shall have until the end of the qualifying to pay the fee with a cashier's check purchased from funds of the campaign account." The same statute explains that the "[f]ailure to pay the fee as provided in this subparagraph shall disqualify the candidate." Id. As explained in the majority opinion, pursuant to the plain language of this subsection, Mr. Wright is disqualified as a candidate because his check was returned by the bank and he did not pay the qualifying fee with a cashier's check by the end of the qualifying period.

While this result is harsh, particularly considering that Mr. Wright did all he could possibly have done to comply with the statutory requirements, this Court does not have the constitutional authority to rewrite statutes lawfully enacted by our state's legislature by just asserting that a statute that it does not wish to enforce

is unnecessary, unreasonable, and arbitrary. I agree with Justice Canady's rejection of the majority's decision to declare the statute unconstitutional. As Justice Canady explains, the petitioner here did not raise a constitutional challenge to the statute in this Court. By addressing and deciding the case based on a facial constitutional claim that was not raised or briefed by the parties, the majority becomes an advocate rather than a neutral decision maker.

Even if the petitioner had raised a facial challenge to the statute, the challenge would fail under this Court's precedent. Because section 99.061(7)(a)1. serves the legitimate government purpose of ensuring that candidates for office lawfully pay the required qualifying fee with campaign funds, it passes the rational basis test and is, therefore, constitutional. See Fla. High School Activities Ass'n v. Thomas, 434 So. 2d 306, 308 (Fla. 1983) ("Under a 'rational basis' standard of review a court should inquire only whether it is conceivable that the regulatory classification bears some rational relationship to a legitimate state purpose.").

The majority holds that the statute is facially unconstitutional due to the circumstances involved in this case while acknowledging that "[f]or those prospective candidates who tender properly executed checks that ultimately clear because they have done all they were required to, the statute poses no problem." Majority op. at 21. This turns facial constitutional review on its head. As this Court has explained, "[f]or a statute to be held facially unconstitutional, the

- 34 -

challenger must demonstrate that no set of circumstances exists in which the statute can be constitutionally applied." Abdool v. Bondi, 141 So. 3d 529, 538 (Fla. 2014); cf. Accelerated Benefits Corp. v. Dep't of Ins., 813 So. 2d 117, 120 (Fla. 1st DCA 2002) ("In considering an 'as applied' challenge, the court is to consider the facts of the case at hand."). Contrary to the majority's decision today, this Court's precedent emphasizes that an "[a]ct will not be invalidated as facially unconstitutional simply because it could operate unconstitutionally under some [] circumstances." Abdool, 141 So. 3d at 538.

I would not foreclose the possibility of a successful as-applied constitutional challenge to this statute. However, as stated above, the petitioner did not raise any constitutional challenge to the statute in this Court, as-applied or otherwise.

I respectfully dissent.

Application for Review of the Decision of the District Court of Appeal – Certified Great Public Importance

Third District - Case No. 3D16-1804

(Miami-Dade County)

Simone Marstiller of The Marstiller Firm, P.A., Tampa, Florida; Jason Monroe Murray and Rashad M. Collins of Murray Law, P.A., Miami, Florida; and Sorraya M. Solages-Jones of SMS Jones Law, PLLC, Wellington, Florida,

for Petitioner

Abigail Price-Williams, Miami-Dade County Attorney, and Oren Rosenthal and Michael Benny Valdes, Miami-Dade Assistant County Attorneys, Miami, Florida,

for Respondent Christina White

Juan-Carlos Planas of KYMP, LLP, Miami, Florida; and Sonja Knighton Dickens, Miami Gardens, Florida,

for Respondents City of Miami Gardens and Ronetta Taylor