# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-2638

_____

LUCY ANN HOOVER,

    Appellant,

    v.

KRISTINA K. MOBLEY and CHRIS
H. CHAMBLESS, in his official
capacity as Supervisor of
Elections for Clay County,
Florida,

    Appellees.

_____


On appeal from the Circuit Court for Clay County.
Howard M. Maltz, Judge.

August 8, 2018


WETHERELL, J.

In this election case, Lucy Ann Hoover appeals the final judgment ordering the Clay County Supervisor of Elections (SOE) to decertify her as a qualified candidate and remove her name from the ballot for the upcoming Clay County Judge Group 2 election because all of her required qualifying paperwork was not received by the SOE before the end of the statutory qualifying period. We affirm for the reasons that follow.

## Facts

The facts—which were mostly undisputed—are set forth in the final judgment:

> On May 3, 2018, Hoover met with Lisa Hogan, the qualifying officer for the SOE. At that time, Ms. Hogan provided Hoover with the candidate packet which included the forms that needed to be completed and submitted to the SOE to qualify for the judicial race.
>
> The following morning, on the final day of the qualifying period (May 4, 2018), Hoover decided to become a candidate for the judicial race at issue. At 10:44 a.m. that morning, Hoover arrived at the SOE and submitted a form for the appointment of campaign treasurer and designation of campaign depository (Form DS-DE 9), designating Wells Fargo as her campaign depository. Hoover submitted none of the other required qualifying documents at that time and left the SOE to open a campaign account at the Wells Fargo branch in Green Cove Springs. Wells Fargo indicated it would be unable to open that account by the noon deadline, so Hoover went to a nearby Vystar Credit Union branch and opened her campaign account. At 11:55 a.m., five minutes prior to the close of the qualifying period, Hoover ran into the SOE. It is undisputed that Hoover did not have all her qualifying paperwork completed at that point, or by the close of the qualifying period, as discussed below. It is also undisputed that Hoover was at the SOE prior to the noon deadline. When Hoover arrived at the SOE at 11:55 a.m., there were no other members of the public or other candidates for any office present. Hoover did not have to wait to engage with Lisa Hogan, the SOE qualifying officer.
>
> At 11:56 a.m., Hoover wrote her qualifying check which was received by Ms. Hogan at 11:57 a.m. At 12:01:34 p.m., Lisa Hogan time-stamped as received Hoover's Candidate Oath (DS-DE 303JU). According to Ms. Hogan, although she time-stamped the Candidate Oath as received at 12:01 p.m., she believed that she received

2

it prior to the 12:00 p.m. closing of the qualifying period. Thus, the Court finds the greater weight of the evidence establishes Hoover's completed Candidate Oath form was received by the SOE prior to the noon close of the qualifying period.

The final required qualifying document submitted by Hoover and received by the SOE was the Financial Disclosure (Form 6) required by Fla. Stat. §105.031(5)(a)5. It is undisputed that Hoover had not completed nor submitted the Form 6 Financial Disclosure to the SOE prior to the noon May 4, 2018, close of the qualifying period. The video from the SOE reveals Hoover was filling out the Form 6 until 12:10 p.m. when it was handed to Ms. Hogan. The Form 6 was not notarized at that time. Ms. Hogan notarized Hoover's Form 6 at 12:12 p.m. and time-stamped it as received at 12:13 p.m. The undisputed evidence establishes that Hoover's completed and notarized Form 6 was received by the SOE at 12:12 p.m., twelve (12) minutes *after* the noon qualifying period.

Although Hoover's completed qualifying paperwork was not received by the SOE until after the close of the qualifying period, the SOE accepted her paperwork and qualified her for the judicial race at issue. The SOE accepted the late paperwork because the SOE has an unwritten policy that as long as a candidate is present in the SOE office prior to the close of the qualifying period, it will accept the paperwork and qualify the candidate, even if the candidate is still completing the qualifying paperwork after the noon deadline and the paperwork is not received by the SOE until after the noon deadline.

It is undisputed that nothing prevented Hoover from submitting all the necessary paperwork to qualify for the judicial race other than her waiting until the last minute to complete and submit the required documents.

(emphasis in original; footnotes omitted).

3

## Trial Court Proceedings

On May 29, 2018, Kristina K. Mobley, the incumbent judge who had timely and properly qualified as a candidate for reelection to the office of Clay County Judge Group 2, filed a complaint challenging the SOE's decision to accept Hoover's qualifying paperwork after the statutory deadline.[1]  Mobley sought a declaratory judgment that Hoover is not a duly qualified candidate and an injunction directing the SOE to decertify Hoover as a qualified candidate and remove her name from the ballot for the county judge election.  Hoover answered the complaint, and after the parties engaged in discovery, they agreed that the trial court could resolve the case based on the pleadings, depositions, a joint stipulation, and memoranda submitted by the parties.  The trial court heard oral argument from the parties on June 19, 2018, and two days later, the court entered a final judgment granting Mobley the declaratory and injunctive relief that she requested in her complaint.  On June 25, 2018, Hoover appealed the final judgment to this Court.

## Analysis

On appeal, Hoover does not dispute that she submitted one of the required qualifying documents after the statutory deadline, but she argues that the SOE properly accepted the late document and qualified her as a candidate because she was in the SOE's office before the end of the qualifying period.  In support of this argument, Hoover relies primarily on *Bayne v. Glisson* in which this Court held that "physical presence in the office of the [filing officer] by a candidate, or his representative, armed with the necessary qualification papers and fees, making a diligent bona fide effort to present the same to the appropriate official meets the requirement of the [qualifying] Statute." 300 So. 2d 79, 82 (Fla. 1st DCA 1974), *cert. denied*, 301 So. 2d 778 (Fla. 1974).

---

[1] The complaint was filed in the Fourth Judicial Circuit, but because Mobley is a sitting county judge in that circuit, it was assigned to a circuit judge from the Seventh Judicial Circuit. *See* Fla. S. Ct. Admin. Ord. 2018-109.

4

In *Bayne*, a prospective candidate for a state legislative seat in south Florida sent a representative to Tallahassee to file his completed qualifying paperwork. *Id.* at 80. The representative arrived at the Secretary of State's office seven minutes before the end of the qualifying period, and when he arrived, the office "was occupied by approximately 100 persons" and "it was impossible to distinguish the election office personnel from the other persons in the mass confusion." *Id.* The representative asked where he could file the candidate's qualifying paperwork and he was (mis)directed to the room in the office where the paperwork was being accepted. *Id.* at 81 (noting that the room was the first door on the *right*, but a receptionist directed the candidate's representative to the first door on the *left*). When the representative arrived at the room, he "was met at the door by someone who halted his entrance and informed him that it was too late to qualify." *Id.* at 80. After the Secretary of State refused to accept the qualifying paperwork, the candidate filed a petition for a writ of mandamus in this Court. *Id.* The Court granted the petition and ordered the Secretary of State to certify the candidate and place his name on the ballot. *Id.* The Court noted that its holding—quoted in the preceding paragraph—was in keeping with the Secretary of State's "custom and practice to accept for filing such papers, fees, and assessments as are presented by persons physically present prior to [the qualifying] deadline." *Id.* at 82.

Hoover's reliance on *Bayne* is misplaced. First, unlike the candidate's representative in *Bayne* whose ability to meet the qualifying deadline was hampered by the large crowd, lack of signage, misdirection, and "mass confusion" when he arrived at the Secretary of State's office minutes before the deadline, *id.* at 80, the evidence here supports the trial court's findings that "there were no other members of the public or other candidates for any office present" when Hoover arrived at the SOE's office and that she "did not have to wait to engage with . . . the SOE qualifying officer." Second, unlike the candidate's representative in *Bayne* who was "armed with the necessary qualifying papers" and "ready, willing, and able" to submit the candidate's qualifying papers prior to the deadline, *id.* at 79, 82, the evidence here supports the trial court's finding that Hoover "was far from ready, willing, and able to submit the necessary qualifying

5

paperwork by the deadline" because she did not even *complete* the last of her qualifying paperwork (the financial disclosure form) until 12 minutes *after* the qualifying deadline.[2] Accordingly, unlike *Bayne* where circumstances beyond the candidate's control caused him to miss the qualifying deadline, the evidence here supports the trial court's dispositive finding that "nothing prevented Hoover from submitting all of the necessary paperwork to qualify for the judicial race other than her waiting until the last minute to complete and submit the required documents." *Accord State ex rel. Vining v. Gray*, 17 So. 2d 228 (Fla. 1944) (explaining that prospective candidate was not entitled to a writ of mandamus compelling the Secretary of State to place his name on the ballot when his qualifying documents were received after the qualifying deadline because he "took the risk of waiting until too late for starting the necessary documents on the way to the office of the Secretary of State").

We recognize that the public policy of Florida generally favors "let[ting] the people decide the ultimate qualifications of candidates." *See State ex rel. Siegendorf v. Stone*, 266 So. 2d 345, 347 (Fla. 1972); *Levey v. Detzner*, 146 So. 3d 1224, 1230 (Fla. 1st DCA 2014) (Makar, J., dissenting from the denial of rehearing en banc) (cited with approval in *Wright v. City of Miami Gardens*, 200 So. 3d 765 (Fla. 2016)); *Bayne*, 300 So. 3d at 82 (quoting *State v. Grey*, 69 So. 2d 187, 193 (Fla. 1953)). However, *absent special circumstances*, public policy considerations cannot override the clear and unambiguous statutory requirement that *all* of the

---

[2] Other cases that have cited *Bayne* have also recognized this distinction. *Compare Falke v. State*, 717 P.2d 369, 374 (Alaska 1986) (holding that candidate who was still completing his qualifying paperwork after the statutory deadline was not qualified and distinguishing *Bayne* because "*Bayne* involved a person who was inside the office ready to file *completed* papers") (emphasis in original) *with Painter v. Shaner*, 667 S.W. 2d 123, 124 (Tex. 1984) (relying on *Bayne* to hold that "a candidate who presents himself on the last day for filing at the correct place, *armed with all essential documents*, but is thwarted in his efforts because he is locked out, is deemed to have timely filed his application for a place on the ballot") (emphasis added).

6

candidate's qualifying paperwork "must be received by the filing officer by the end of the qualifying period." § 105.031(5)(a), Fla. Stat. (2017); *Bayne*, 300 So. 2d at 82 ("A statutory requirement as to the time for filing a declaration of candidacy is mandatory, and a declaration filed too late is a nullity, at least in the absence of special circumstances or special showing of excuse.") (quoting 29 C.J.S. Elections § 114); *see also Falke*, 717 P.2d at 774 (noting that "the weight of case law authority holds that statutory filing deadlines are to be strictly enforced" and disapproving elections office policy pursuant to which "[c]andidates who already are inside [the office] and are in the process of completing their forms are permitted to finish and are deemed to have 'timely filed' when they turn in forms after the deadline"); *Butts v. Bysiewicz*, 5 A.3d 932, 940 n.7 (Conn. 2010) (citing *Bayne* and cases from other states for the proposition that "in extraordinary circumstances, courts can excuse a failure to comply with mandatory filing deadlines for declarations of candidacy due to (1) an action by the state, particularly election officials, causing the late filing, or (2) the impossibility of compliance"). Here, there were no special circumstances that would excuse Hoover's failure to meet the qualifying deadline, but rather, as in *Vining*, *supra*, this is simply a case of a prospective candidate missing the qualifying deadline because she waited until too late to complete the necessary paperwork.

## Conclusion

For the reasons stated above (and because we find the other arguments raised by Hoover on appeal to be unpreserved[3] and/or meritless), we affirm the final judgment ordering the SOE to decertify Hoover as a qualified candidate and remove her name

---

[3] Hoover's argument that the SOE should be estopped from disqualifying her as a candidate because she relied to her detriment on its policy that she need only be present in the office at the time of the noon deadline for her qualifying papers to be considered as timely filed was not raised below, and thus, the argument cannot be considered on appeal.

7

from the ballot for the upcoming Clay County Judge Group 2 election.

AFFIRMED.

BILBREY and M.K. THOMAS, JJ., concur.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

Lucy Ann Hoover, pro se, Appellant.

Paul M. Renner and Michael T. Fackler of Milam Howard Nicandri Gillam & Renner, P.A., Jacksonville, for Appellee Kristina K. Mobley.

No appearance for Appellee Chris H. Chambless.